No. 22-35555

———————————————

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

FRIENDS OF THE CRAZY MOUNTAINS, et al.,
Plaintiffs – Appellants,

v.

MARY ERICKSON, et al.,
Federal Defendants – Appellees,

M HANGING LAZY 3 LLC; HENRY GUTH, INC.,
Landowner Defendants – Appellees.

———————————————

On Appeal from the United States District Court
for the District of Montana
Honorable Rebecca Watters, District Judge

———————————————

**LANDOWNER DEFENDANTS – APPELLEES'
ANSWERING BRIEF**

———————————————

PAIGE E. GILLIARD
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
PGilliard@pacificlegal.org

JEFFREY W. McCOY
Pacific Legal Foundation
1745 Shea Center Drive, Suite 400
Highlands Ranch, Colorado 80129
Telephone: (916) 419-7111
JMcCoy@pacificlegal.org

*Attorneys for Landowner Defendants – Appellees*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Landowner Defendant-Appellee M Hanging Lazy 3, LLC, an LLC organized under the laws of Montana, hereby states that it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

Pursuant to Federal Rule of Appellate Procedure 26.1, Landowner Defendant-Appellee Henry Guth, Inc., a corporation organized under the laws of Montana, hereby states that it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION ....................................................................................... 1

STATEMENT OF JURISDICTION ............................................................ 2

STATEMENT OF THE ISSUE ................................................................... 2

STATUTORY AND REGULATORY AUTHORITIES ............................. 3

STATEMENT OF THE CASE ................................................................... 6

    A. The Zimmermans' Property and the Crazy Mountains ................ 6

    B. 2006 Travel Plan and 2009 Road and Trail Work Decision ......... 8

    C. The Trail Donation Agreement ................................................... 11

    D. Appellants' Lawsuit ..................................................................... 12

    E. District Court Decision ................................................................ 13

SUMMARY OF ARGUMENT ................................................................. 15

STANDARD OF REVIEW ....................................................................... 16

ARGUMENT ............................................................................................ 17

    I. This Court Cannot Undo the Easement Donation ......................... 17

    II. The Trail Donation Agreement Did Not Violate NEPA ................ 20

      A. Appellants Continue to Mischaracterize the Nature
         of the Easement Donation ......................................................... 20

      B. Appellants Failed to Exhaust Any NEPA Claim
         With Respect to the Railroad Deeds ......................................... 30

C. The Trail Donation Agreement Is Not Subject
to NEPA Analysis .................................................................. 32

D. Previous NEPA Analyses Recognized That the Forest
Service Needed to Obtain Access Across Private
Property and Analyzed the Impacts of Obtaining Access ........... 34

CONCLUSION ................................................................................ 38

STATEMENT OF RELATED CASES ................................................. 39

CERTIFICATE OF COMPLIANCE FOR BRIEFS ............................. 40

CERTIFICATE OF SERVICE .......................................................... 41

# TABLE OF AUTHORITIES

## Cases

*Alaska v. Andrus,*
    591 F.2d 537 (9th Cir. 1979) ........................................................ 32–33

*Blazer v. Wall,*
    183 P.3d 84 (Mont. 2008) ................................................ 22, 24, 28–29

*Camp v. Pitts,*
    411 U.S. 138 (1973) ...................................................................... 17

*Dep't of Transp. v. Pub. Citizen,*
    541 U.S. 752 (2004) ...................................................................... 30

*Greenwood v. F.A.A.,*
    28 F.3d 971 (9th Cir. 1994) .......................................................... 29

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ................................................................. 27–28

*Heller v. Gremaux,*
    53 P.3d 1259 (Mont. 2002) ........................................................... 21

*Lands Council v. Powell,*
    395 F.3d 1019 (9th Cir. 2005) ....................................................... 17

*Nat'l Parks & Conservation Ass'n v. Babbitt,*
    241 F.3d 722 (9th Cir. 2001) ......................................................... 28

*Native Ecosystems Council v. Dombeck,*
    304 F.3d 886 (9th Cir. 2002) ......................................................... 17

*Nevada Land Action Ass'n v. U.S. Forest Service,*
    8 F.3d 713 (9th Cir. 1993) ............................................................ 17

*Occidental Engineering Co. v. I.N.S.,*
    753 F.2d 766 (9th Cir. 1985) ......................................................... 19

*Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,*
    429 U.S. 363 (1977) ...................................................................... 26

iv

*Oregon Natural Desert Ass'n v. Jewell*,
840 F.3d 562 (9th Cir. 2016)......................................................30–31

*Pit River Tribe v. U.S. Forest Service*,
469 F.3d 768 (9th Cir. 2006)............................................................ 16

*Pub. Lands Access Ass'n v. Bd. of Cnty. Comm'rs of Madison Cnty.*,
321 P.3d 38 (Mont. 2014)............................................................23–24

*Public Land/Water Access Ass'n, Inc. v. Robbins*,
483 P.3d 1102 (Mont. 2021)...................................................8, 20–22

*Robertson v. Methow Valley Citizens Council*,
490 U.S. 332 (1989)........................................................................ 19

*Ruana v. Grigonis*,
913 P.2d 1247 (Mont. 1996).............................................................. 23

*Sierra Club v. Penfold*,
857 F.2d 1307 (9th Cir. 1988).......................................................... 32

*United States v. Dunkel*,
927 F.2d 955 (7th Cir. 1991)............................................................ 30

*United States v. Van Cleve*,
Case No. 1098 (D. Mont. 1948)........................................................ 25

*Wild River Adventures, Inc. v. Bd. of Trustees of Sch. Dist.
No. 8 of Flathead Cnty.*,
812 P.2d 344 (Mont. 1991).................................................22–23, 29

## Statutes

5 U.S.C. § 706 .................................................................................2

5 U.S.C. § 706(2) ...........................................................................17

28 U.S.C. § 1291 .............................................................................2

28 U.S.C. § 1331 .............................................................................2

28 U.S.C. § 2107(b).........................................................................2

42 U.S.C. § 4332 ............................................................................. 3

42 U.S.C. § 4332(C) ....................................................................... 32

## Regulations

36 C.F.R. § 220.6 ......................................................................... 3–4

36 C.F.R. § 220.6(d)(6)(i) ......................................................... 4, 34

40 C.F.R. § 1500.1 ...................................................................... 4–5

40 C.F.R. § 1500.1(a) ........................................................... 4–5, 32

40 C.F.R. § 1508.1 ...................................................................... 5–6

40 C.F.R. § 1508.1(q)(1)(iv) ................................................... 32–33

40 C.F.R. § 1508.1(q)(3) ....................................................... 5–6, 32

## Rule

Fed. R. App. P. 4(a)(1) .................................................................. 2

## INTRODUCTION

The Forest Service and private landowners amicably resolved a longstanding access dispute concerning private property, thereby avoiding costly, time-consuming, and uncertain litigation over a potential prescriptive easement claim. Under their Trail Donation Agreement, landowners M Hanging Lazy 3, LLC and Henry Guth, Inc. (collectively, the Zimmermans) donated to the Forest Service a perpetual easement providing public access to federal land in the Crazy Mountains. Landowner Defendants-Appellees Supplemental Excerpts of Record SER-117–129. Having avoided conflict and acquired the necessary rights, the Forest Service built the trail in 2019.

Appellants disagree with the Forest Service's decision to negotiate rather than escalate the conflict. In an attempt to force the Forest Service to take Appellants' preferred course of action, Appellants brought several procedural claims against the Forest Service's acceptance of the Trail Donation Agreement. The District Court below rejected these claims, primarily because the Forest Service "never legally owned an interest in" the Zimmermans' property before the Trail Donation Agreement. *See* 1-

ER-0031 (findings and recommendations adopted by the District Court); 1-ER-0018.

Appellants now appeal only one of their claims, the claim that the Forest Service failed to comply with the National Environmental Policy Act ("NEPA"). As the District Court correctly held below, the Forest Service complied with NEPA before accepting the easement donation from the Zimmermans. Appellants cannot upset this Trail Donation Agreement through the one procedural claim it appeals.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because Appellants' claims arise under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. The District Court's judgment was final, and this Court has jurisdiction under 28 U.S.C. § 1291. Appellants filed their notice of appeal on July 14, 2022. 5-ER-1054. That appeal is timely under 28 U.S.C. § 2107(b) and Fed. R. App. P. 4(a)(1).

## STATEMENT OF THE ISSUE

Whether the Forest Service's multiple environmental reviews for trail construction complied with the National Environmental Policy Act?

## STATUTORY AND REGULATORY AUTHORITIES

42 U.S.C. § 4332 provides, in relevant part:

> The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—
>
> ***
>
> (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—
>
> > (i) the environmental impact of the proposed action,
> >
> > (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
> >
> > (iii) alternatives to the proposed action,
> >
> > (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
> >
> > (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
>
> ***

36 C.F.R. § 220.6 provides, in relevant part:

(a) General. A proposed action may be categorically excluded from further analysis and documentation in an EIS or EA only if there

3

are no extraordinary circumstances related to the proposed action and if:

(1) The proposed action is within one of the categories established by the Secretary at 7 CFR part 1b.3; or

(2) The proposed action is within a category listed in § 220.6(d) and (e).

\*\*\*

(d) Categories of actions for which a project or case file and decision memo are not required. A supporting record and a decision memo are not required, but at the discretion of the responsible official, may be prepared for the following categories:

\*\*\*

(6) Acquisition of land or interest in land. Examples include but are not limited to:

(i) Accepting the donation of lands or interests in land to the NFS,

\*\*\*

40 C.F.R. § 1500.1 provides, in relevant part:

(a) The National Environmental Policy Act (NEPA) is a procedural statute intended to ensure Federal agencies consider the environmental impacts of their actions in the decision-making process. Section 101 of NEPA establishes the national environmental policy of the Federal Government to use all practicable means and measures to foster and promote the general welfare, create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans. Section 102(2) of NEPA establishes the

4

procedural requirements to carry out the policy stated in section 101 of NEPA. In particular, it requires Federal agencies to provide a detailed statement on proposals for major Federal actions significantly affecting the quality of the human environment. The purpose and function of NEPA is satisfied if Federal agencies have considered relevant environmental information, and the public has been informed regarding the decision-making process. NEPA does not mandate particular results or substantive outcomes. NEPA's purpose is not to generate paperwork or litigation, but to provide for informed decision making and foster excellent action.

***

40 C.F.R. § 1508.1 provides, in relevant part:

The following definitions apply to the regulations in this subchapter. Federal agencies shall use these terms uniformly throughout the Federal Government.

***

(q) Major Federal action or action means an activity or decision subject to Federal control and responsibility subject to the following:

***

(3) Major Federal actions tend to fall within one of the following categories:

(i) Adoption of official policy, such as rules, regulations, and interpretations adopted under the Administrative Procedure Act, 5 U.S.C. 551 et seq. or other statutes; implementation of treaties and international conventions or agreements, including those implemented pursuant to statute or regulation; formal documents establishing an

5

agency's policies which will result in or substantially alter agency programs.

(ii) Adoption of formal plans, such as official documents prepared or approved by Federal agencies, which prescribe alternative uses of Federal resources, upon which future agency actions will be based.

(iii) Adoption of programs, such as a group of concerted actions to implement a specific policy or plan; systematic and connected agency decisions allocating agency resources to implement a specific statutory program or executive directive.

(iv) Approval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as Federal and federally assisted activities.

\*\*\*

# STATEMENT OF THE CASE

## A.    The Zimmermans' Property and the Crazy Mountains

The area in and around the Crazy Mountains, like much of the American West, is a checkerboard of federal, state, and private land. SER-218. Depending on the layout of the board, public access to federal lands can be a significant challenge and source of conflict. Sometimes there are few or no possible routes across federal land. Where the public

appetite for access exceeds the capacity for federal land to provide it, access depends on easements, landowner permission, or illegal trespass.

Such is the case in the Crazy Mountains. There are few points within the range providing access via public lands or perfected easements. SER-163–64. There are several areas where access rights have been disputed but no easements or other rights have ever been established by law. *Id.*

M Hanging Lazy 3, LLC and Henry Guth, Inc., which are owned by the Zimmermans and their extended family, own private land in the Crazy Mountains used for ranching and timber harvesting. SER-201, SER-113, SER-195–96, SER-187, SER-122, SER-197. Prior to the 2019 Trail Donation Agreement, this land was not encumbered by any easement for a Forest Service or other public trail. SER-197–98; SER-147.

Forest Service personnel and members of the public had speculated that an easement for a trail, the Porcupine Lowline Trail, could be established across the Zimmermans' land by prescription. SER-204. However, neither the Forest Service nor any other party has ever perfected any such easement, a legal process that would require them to

7

bear the burden of establishing a half-dozen factors by clear and convincing evidence under state law. SER-197–98; SER-147. *See Public Land/Water Access Ass'n, Inc. v. Robbins*, 483 P.3d 1102, 1116 (Mont. 2021).

The Zimmermans have taken several steps to protect their rights and their property, including erecting fences, installing gates, and posting signs. 3-ER-0413. They have maintained these items for 20 years. SER-155–56. And, for at least twelve years, the Forest Service has advised the public not to enter the Zimmermans' property without permission. SER-156. However, the Zimmermans have also been willing to work with the Forest Service to grant public access, provided that their property rights are respected. *See, e.g.*, SER-180.

### B. 2006 Travel Plan and 2009 Road and Trail Work Decision

In 2006, the Forest Service issued a Travel Plan for the Gallatin National Forest. 2-ER-0198–0324. One of that plan's goals was to provide "reasonable, legal access to Gallatin National Forest lands to provide for human use and enjoyment and to protect and manage Forest resources and values." SER-161; 1-ER-0025. With respect to public use of the Porcupine Lowline Trail, the Plan acknowledged that the Forest Service

"must first negotiate an easement for portions of this trail that pass through private land." 2-ER-0250. The Plan also listed the Porcupine Lowline area as one where trail access would have to be perfected. SER-161–64. In the Plan's discussion of the Ibex Travel Planning Area (where the Zimmermans' land is located), the Forest Service reiterated its objective to "[s]ecure easements through private land on roads and trails designated for public use[.]" SER-179. And, in the response to the Zimmermans' comments, the Forest Service expressed its "willing[ness] to work with any landowner in agreeing to a long-term location and easement" for a trail. SER-220.

In an administrative appeal, the Zimmermans objected to the Plan's depiction of a trail across their property because the Forest Service had established no valid easement rights. *See* SER-155–56. The Appeal Deciding Officer acknowledged that such depictions have led "to concern with adjacent landowners over what rights currently exist or do not exist." SER-216. However, she concluded that the Travel Plan adequately disclosed that "there are insufficient rights or no existing rights" for some trails depicted in the Travel Plan, including the Porcupine Lowline Trail, by identifying them in a table as areas where the Forest Service's

9

objective was to establish needed rights. *Id.* (citing SER-163–64). She further recommended that the Forest Supervisor clarify how such rights would be obtained. *Id.* As the Appeal Deciding Officer confirmed that the Travel Plan's depiction of a trail did not establish any easement but merely indicated the Forest Service's goal of establishing access rights at some later time, the Zimmermans had no cause to appeal the decision any further.

In 2009, the Forest Service issued a Road and Trail Work Decision to implement the 2006 Travel Plan. 4-ER-0634–0678. This document provided the clarification suggested by the Appeal Deciding Officer, acknowledging that the route depicted for the Porcupine Lowline Trail "passes through large portions of private lands with fences, gates, past harvest and road building" and proposed that some portions of this route "may be shifted onto National Forest land to the east" and any route across private land will "be relocated to correspond with final rights-of-way." 3-ER-0413. The Environmental Assessment and Finding of No Significant Impact accompanying the 2009 Road and Trail Decision analyzed the environmental impacts of constructing a trail if final rights-of-way could be obtained. 3-ER-0398–0599.

10

### C. The Trail Donation Agreement

Pursuant to the Forest Service Manual, *see* SER-211–12, and the Forest Service's representations in the 2006 Travel Plan and 2009 Road and Trail Decision, the agency negotiated with the Zimmermans to secure a perpetual easement and resolve the dispute. SER-180–92; SER-207. In 2018, the two sides were close enough to an agreement that the Forest Service began the public scoping process for construction of the Porcupine Ibex Trail. SER-207. The Forest Service asked the public to identify any environmental impacts of trail construction that had not previously been analyzed under the 2006 Travel Plan and the 2009 Road and Trail Decision. *Id.* No significant, unanalyzed environmental impacts were identified. *Id.*

In June 2019, the Zimmermans agreed, pending formal approval by the Forest Service, to donate an easement across their property in exchange for the agency not pursuing any disputed claims over the Porcupine Lowline Trail. SER-180–92. The Zimmermans and the Forest Service executed this Trail Donation Agreement in September 2019, with the Zimmermans donating a well-defined easement to the Forest Service

11

and the Service releasing "any easement interests it *may* have" in the Porcupine Lowline Trail. SER-117–19 (emphasis added).

### D.  Appellants' Lawsuit

As the Zimmermans and the Forest Service were working toward a resolution, Appellants filed this case challenging various Forest Service actions (and inaction) with respect to disputed Crazy Mountain trails, including the Porcupine Lowline Trail. Appellants initially sought a preliminary injunction, which the District Court denied because Appellants had "not raised serious questions" about the adequacy of the Service's environmental analysis, their case "rests on the faulty assumption the Forest Service has a bonafide interest in the disputed portions of the [Porcupine Lowline] trail[]," and Plaintiffs' claims attacked the rights of "private landowners, who are not parties to this lawsuit." SER-146–48. The District Court also concluded that the public interest weighed against an injunction because blocking the Forest Service and the Zimmermans' agreement would "result in losing permanent public access rights to preserve what is only a potential easement interest in the trails." SER-150–52.

After the Trail Donation Agreement was executed, Appellants moved to supplement their complaint and name M Hanging Lazy 3, LLC and Henry Guth, Inc. as defendants, which the District Court allowed. *See* SER-110-11. This supplemental complaint asserted three categories of claims, all against the Forest Service under the Administrative Procedure Act (APA). Appellants brought no claims against the Zimmermans. *See* SER-052. Instead, the Zimmermans were included as defendants in this lawsuit solely to protect any interest that could be adversely affected by plaintiffs' APA challenge to the Forest Service's acceptance of the Trail Donation Agreement.[1]

## E. District Court Decision

Appellants, the Forest Service, and the Zimmermans filed cross-motions for summary judgment on all of Appellants' claims. After a hearing, Magistrate Judge Cavan issued findings and recommendations recommending that Appellants' motion for summary judgment be denied, and that the Forest Service and Zimmermans' motions for summary

---

[1] Consistent with that reason for their inclusion, on appeal the Zimmermans address only those arguments that call into question the Trail Donation Agreement and defer to the Forest Service on the remainder of Appellants' NEPA claims.

judgment be granted. 1-ER-0049. The District Court adopted the findings and recommendations in full, and entered judgment in favor of the Zimmermans and the Forest Service. 1-ER-0021–22.

The Findings and Recommendations, as well as the District Court decision, recognized that Appellants' arguments failed in large part because the Forest Service "did not possess any kind of fee interest or hold an established, recorded easement" over the Zimmermans' property. 1-ER-0033 (findings and recommendations); *see also* 1-ER-0014 (district court decision). Because the Forest Service did not own any interest across the Zimmermans' property prior to the Trail Donation Agreement, the statutes that govern how the Forest Service manages its land—the Federal Land Policy and Management Act (FLPMA) and the National Forest Management Act (NFMA)—did not apply to the management of land owned by someone else, i.e., the Zimmermans. 1-ER-0015, 1-ER-0020.

The District Court also rejected Appellants' argument that the Forest Service failed to comply with the National Environmental Policy Act (NEPA). 1-ER-0015–20. In concluding that the Forest Service adequately studied the impacts of the Forest Service's trail project, the

District Court concluded that Appellants failed to identify specific issues or alternatives that the Forest Service failed to consider in the years-long process that resulted in the construction of the current trail. 1-ER-0017–19. The District Court also rejected Appellants' contention that the Forest Service failed to consider a potential easement in a Northern Pacific railway deed. 1-ER-0019. The District Court concluded that the Forest Service did not have to consider these deeds because Appellants failed "to establish that the railway deeds are connected to any specific parcel or explain how the deeds would be relevant to the agency's analysis of the environmental impacts." *Id.*

Appellants appeal only the judgment on its NEPA claims, and do not challenge the District Court's holdings on the FLPMA and NFMA Claims.

## SUMMARY OF ARGUMENT

The Trail Donation Agreement between the Zimmermans and the Forest Service did not violate NEPA. Because the Forest Service never had a property interest in any portion of the Zimmermans' land, the Forest Service did not relinquish any property interest when it accepted the Zimmermans' donation of an easement for public access. Appellants'

15

characterization of the easement donation as an easement exchange rests on the faulty premise that the Forest Service or the public had a potential easement across the property. But that conclusion is unsupported by the administrative record in this case: the Forest Service knew it did not hold any interest in the Zimmermans' property and would need to acquire access rights from private property owners. And because the decision not to litigate speculative potential easement claims is not a major federal action, and because the acceptance of a trail donation is categorically excluded from NEPA, the Forest Service did not violate NEPA when it accepted the easement donation. Even if the Forest Service was required to conduct NEPA analysis to accept the trail, the agency complied with the statute by conducting environmental review prior to issuing 2009 Road and Trail Decision and by conducting public scoping prior to the accepting the trail donation.

## STANDARD OF REVIEW

The Courts of Appeals review grants of summary judgment de novo. *See Pit River Tribe v. U.S. Forest Service*, 469 F.3d 768, 778 (9th Cir. 2006). Because NEPA does not independently provide for judicial review, NEPA claims are brought under the APA. *Id*. Under the APA, agency

16

action may be challenged as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2). *See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002). Judicial review is based on the administrative record that was before the agency at the time it made its decision. *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Nevada Land Action Ass'n v. U.S. Forest Service*, 8 F.3d 713, 718 (9th Cir. 1993). The court may only set aside agency action if the agency ignored factors required to be considered, its judgment is not supported by substantial evidence in the administrative record, or the action is contrary to governing law. *See Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005).

## ARGUMENT

### I. This Court Cannot Undo the Easement Donation

It is important to keep in mind what Appellants are not challenging on appeal. Appellants bring no claim against the Zimmermans, do not challenge the legality of the easement donation, or ask this Court to undo the easement donation. *See generally* Appellants' Opening Brief (Opening Br.) at 3. Appellants argument in this appeal is therefore much narrower than what they argued below. During the proceedings at the District

Court, Appellants challenged the legality of the easement donation and requested the District Court to vacate and rescind the agreement. SER-097. And the District Court only joined the Zimmermans to this proceeding because Friends of the Crazy Mountains argued that "the only way the court can provide complete relief is if the easement exchange is rescinded[.]" SER-110. No such claim is now before this Court.

Indeed, Appellants challenge to the easement donation at the District Court was largely based on claims that they have elected not to appeal. *See* Opening Br. at 19 n.3 ("Friends of the Crazy Mountains also alleged violations of the Federal Land Policy Management Act related to the easement exchange for the project .... They have elected not to pursue these claims on appeal."). Below, Appellants alleged that the Forest Service violated the Federal Land Policy and Management Act by accepting the easement donation and requested the District Court to rescind the agreement. *See* SER-097; SER-110. The District Court declined to rescind the agreement and held that the Forest Service had no legally valid property rights in the Zimmermans' land prior to the Trail Donation Agreement. 1-ER-0014–0015. Appellants do not challenge that holding.

18

To the extent Appellants attempt to challenge the easement donation here, such a challenge is inappropriate given the structure of this appeal. Appellants appeal is limited to alleged violations of NEPA—which is a procedural statute only—and brought under the APA against the Forest Service. *See* Opening Br. at 3; *see also Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) ("[I]t is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process."). The only question before this Court is whether the Forest Service could make the decision it did with respect to the Porcupine Ibex Trail, based upon the record that was before the agency at the time it made its decision. *See, e.g.*, *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769–70 (9th Cir. 1985) (explaining that the role of the court in an APA case is to determine "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."). This appeal presents no opportunity for the Court to reconsider the easement donation.

## II.     The Trail Donation Agreement Did Not Violate NEPA

### A.     Appellants Continue to Mischaracterize the Nature of the Easement Donation

Despite not appealing the District Court's holding that the Forest Service never had a bona fide property right in the Zimmermans' land, Appellants continue to allege that the Forest Service "gave up" National Forest trails as part of the Ibex Project. *See* Opening Br. at 35. That characterization directly contradicts an adverse holding on a claim Appellants elected not to appeal, confuses the issues here, and is unsupported by the record in this case.

First, the Forest Service never "gave up" National Forest trails as part of the Ibex project because it never had a bona fide property interest in the Zimmermans' land. Indeed, the District Court explicitly held that "the [Forest Service] has no legally valid interest in the portions of trails that traverse private property." 1-ER-0020. As discussed above, Appellants do not challenge that holding. Although there was speculation that the Forest Service could have established an easement through prescription, SER-204, the Forest Service never did so and never perfected such an easement, which would have required several factors to have been established under Montana law. *See, e.g.*, *Robbins*, 483 P.3d

20

at 1115 (explaining that a prescriptive easement requires "clear and convincing evidence" that the use was "open, notorious, exclusive, adverse, continuous and uninterrupted for the complete statutory period") (quoting *Heller v. Gremaux*, 53 P.3d 1259, 1263 (Mont. 2002)). No such showing was ever made here.

As the District Court noted, simply stating that an easement exists is insufficient since "one cannot be said to 'own' the easement until it has been declared to exist." 1-ER-0014. Beliefs or feelings about ownership are not enough as a matter of law to establish an easement or property right. Here, the Forest Service never established a prescriptive easement across any portion of the Zimmermans' private property. That fact does not change because Appellants continue to mischaracterize the easement donation as an easement exchange.

Although unnecessary to the resolution of Appellants' NEPA claim, the Zimmermans note that a prescriptive easement would be difficult to prove. Despite Appellants' frequent characterization of the trail as "historic," Opening Br. at 1–2, Appellants ignore that the location of the trail has been inconsistently identified and that there is a lack of physical evidence that the trail crossed private property. *See, e.g.*, 5-ER-0911-

0912. Indeed, the Forest Service's own maps do not identify a consistent location for the trail. *See* 5-ER-0912 ("The location of the trail alignment itself has varied up to a mile over the decades."). And the alleged uses of the trail—Forest Service work and later public recreational use—is not sufficient under Montana law to establish adversity. *See* 5-ER-0911-0912. *See also Robbins*, 483 P.3d at 1116.

The more-than-150-years-old railway deeds cited by the Appellants likewise did not and do not confer any property right in the Zimmermans' land on either the Forest Service or the public. The Northern Pacific Railroad deed relied upon by Appellants reads, in relevant part, that the land was "subject, however, to an easement in the public for any public roads heretofore laid out or established, and now existing over and across any part of the premises." 4-ER-0789. But Appellants ignore that that language is insufficient as a matter of law to establish an easement. Indeed, the Montana Supreme Court has "consistently held that 'subject to' language in a document of conveyance does not create an easement." *Blazer v. Wall*, 183 P.3d 84, 103 (Mont. 2008) (citation omitted); *see also Wild River Adventures, Inc. v. Bd. of Trustees of Sch. Dist. No. 8 of Flathead Cnty.*, 812 P.2d 344, 346–47 (Mont. 1991) (explaining that

22

"[n]ormally, however, the words 'subject to' do not create an easement," and that "[t]here is nothing in the use of the words 'subject to' in their ordinary use, which would even hint at the creation of affirmative rights or connote a reservation or retention of property rights."); *Ruana v. Grigonis*, 913 P.2d 1247, 1252–54 (Mont. 1996) (same). Indeed, the deed does not even identify any specific easements, instead using boilerplate language about "*any* public roads" that may or may not exist over the area.

Appellants cite *Pub. Lands Access Ass'n v. Bd. of Cnty. Comm'rs of Madison Cnty.*, 321 P.3d 38, 50 (Mont. 2014), for the proposition that "public easement[s] are generally upheld 'as long as the deed's language sufficiently locates the easement.'" Opening Br. at 45. But that case is inapposite for several reasons. First, the deed here is vastly different than the one examined in *Pub. Lands Access Ass'n*. In *Pub. Lands Access Ass'n*, the deed at issue was assumed to be validly granted because the deed's text expressly dedicated a well-defined sixty-foot right of way to the county for public use. 321 P.3d at 50–51. The deed identified the specific location of the right of way and its parameters. *Id*. Therefore, the issue there was not whether there was a right-of-way reserved in the

23

deed, but rather the scope of the easement itself. *Id.* at 50. Here, by contrast, the railroad deed relied upon by Appellants does not establish an easement or purport to reserve anything for the public. Instead, it refers to "any" existing easement across two sections of land spanning over 1,200 acres. 4-ER-0789. It does not definitively state that there even is an easement or attempt to locate where over the 1,200 acres such an easement would exist. *Id.*

Second, *Pub. Lands Access Ass'n* did not interpret the phrase "subject to," much less suggest that such an amorphous phrase is enough to establish an easement. Such an interpretation would greatly upset settled principles of property law. Indeed, the Montana Supreme Court has declined to read the phrase "subject to" in the way that Appellants wish. *See, e.g.*, *Wall*, 183 P.3d at 103 (explaining that the Court "refuse[s] to wrench these settled principles from their moorings—and thereby inject uncertainty into our easement caselaw—by employing a 'subject to' clause to create an easement").

Appellants attempt to deflect the incongruity between their argument and Montana caselaw concerning the language "subject to" by instead focusing on the railroad deed's reference to "public roads."

Opening Br. at 47–48. But Appellants cite no Montana caselaw that states that reference to "public roads" alone is sufficient to establish an easement. Instead, Appellants look to dictionary definitions of "public road," "highway," and "public highway." *Id.* However linguistically interesting such a dictionary exercise may be, it does nothing to alter the analysis of the case at hand. The definition of "public road" in Black's Law Dictionary does not transform the use of that phrase into magic words that create a valid conveyance of property in a decades-old deed.

Appellants' reliance on *United States v. Van Cleve*, Case No. 1098 (D. Mont. 1948), is just as unhelpful as its dictionary exercise. Opening Br. at 47–48. Appellants allege that *Van Cleve* is "instructive" because it shows how the United States understood "public road" in Northern Pacific railroad deeds and because it involved an enforcement action against a private landowner in the Crazy Mountains. *Id.* But *Van Cleve* does nothing to help Appellants here. First, Appellants do not cite to a court decision in *Van Cleve*, but rather to an amended complaint and a memorandum in support of a motion for contempt filed by the United States in 1949 in federal court. *See* 2-ER-0060–0078.How the United States understood the phrase "public road" and Northern Pacific railroad

deeds over seventy years ago in that action has no bearing on how that phrase or the railroad deed cited by the Appellants are understood today. Moreover, the cited portions of *Van Cleve* relied on by Appellants do not contain a copy of the deed at issue in *Van Cleve* or a recitation of the full language of the deed, so its similarities, if any, to the deed relied upon by Appellants here is merely speculative. But even if the deed in *Van Cleve* and the deed relied on by Appellants here were identical, *Van Cleve* would still not help Appellants because, as discussed above, the language in the railroad deed here is insufficient as a matter of law to establish an easement.[2]

Second, the context of *Van Cleve* is vastly different from the facts here. In *Van Cleve*, the government pursued an enforcement action against a private landowner. 2-ER-0063. Here, the Forest Service has brought no claim against the Zimmermans for access, and the court below did not authorize any claims against the Zimmermans. *See* SER-100–12.

---

[2] Indeed, because state property law governs whether the federal government has a property interest in a piece of property, *see Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378–79 (1977), even the court's decision in *Van Cleve* would have little relevance here because more recent Montana Supreme Court decisions lay out the factors for creating an easement in a deed.

26

Instead, the Forest Service negotiated with the Zimmermans and reached a mutually beneficial agreement that provided public access. *See* SER-180–92; SER-117–19. Whatever motivated the United States' decision to pursue litigation in *Van Cleve*, the Forest Service's decision not to do so with the Zimmermans was entirely consistent with Forest Service policy. *See* 1-ER-0034 (Findings and Recommendations stating that Forest Service's decision not to pursue a quiet title action "appears well within the agency's discretion."). There is no legislative or legal command requiring the Forest Service to pursue litigation as opposed to negotiation, *id.*, and Forest Service policy encourages negotiation. SER-212. Indeed, the Forest Service manual directs the Service to "make every reasonable effort to negotiate a satisfactory easement on equitable terms." *Id.*

And litigation is seen as a last resort, only to be undertaken where "there is no reasonable way to avoid non-Federal land and the right-of-way cannot be satisfactorily acquired through negotiation, or clear title cannot be conveyed due to title defects[.]" *Id.* Even then, there is no legal requirement for the Forest Service to pursue litigation. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (explaining that "an agency's refusal

to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch").

Despite Appellants argument to the contrary, the railroad deeds are not the sort of "relevant issue," Opening Br. at 53, that "casts serious doubt upon the reasonableness of an agency's conclusions." *Id.* (quoting *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 736 (9th Cir. 2001)). The cited railroad deed does not establish any property right under Montana law and does not identify the location of any easement with any of the required specificity. Appellants admit that "precisely what the Northern Pacific deed's reservation of an 'easement in the public' means and which public roads and trails it applies to in Section 15 remains unclear," but alleges that "such ambiguity and uncertainty is solely the product of the Forest Service having never analyzed or even responded to this issue[.]" Opening Br. at 53. But that is incorrect. Under Montana property law, the deed cited by the Appellants does not confer any property right or reserve an easement. *See, e.g.*, *Wall*, 183 P.3d at

103; *see also Wild River Adventures*, 812 P.2d at 346. No amount of Forest Service analysis can change Montana's property law.

Moreover, Appellants' unhappiness with the Forest Service's decision to negotiate for access rather than pursue litigation cannot transform the easement donation into an "easement exchange." There is no support for Appellants' allegation that the Forest Service gave up any property rights when it negotiated with the Zimmermans, much less an established easement. And as discussed above, Appellants did not appeal the District Court's holding that the Forest Service did not own a bona fide property right in the Zimmermans' land. *See, infra*, section I.

Appellants' persistent mischaracterization of the easement donation as an easement exchange confuses the issue here. Any issues regarding the legality of the easement donation are not covered by Appellants' NEPA claim. In this appeal, Appellants do not request that this Court rescind the easement donation and bring no legal challenge against the agreement. The role of this Court on appeal is to "review only issues which are argued specifically and distinctly in a party's opening brief." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994). Indeed, courts "will not manufacture arguments for an appellant, and a bare

assertion does not preserve a claim[.]" *Id.* (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)).

## B. Appellants Failed to Exhaust Any NEPA Claim With Respect to the Railroad Deeds

Even if the railroad deed cited by the Appellants has the effect that they allege, they cannot now rely on it to challenge the easement donation because they failed to exhaust that claim during prior administrative processes. The Supreme Court has stated that "[p]ersons challenging an agency's compliance with NEPA must structure their participation so that it ... alerts the agency to the [parties'] position and contentions, in order to allow the agency to give the issue meaningful consideration." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764 (2004) (internal punctuation omitted). And this Court held that "[j]udicial review is available for NEPA challenges under the APA only if the NEPA plaintiffs exhaust their administrative remedies." *Oregon Natural Desert Ass'n v. Jewell*, 840 F.3d 562, 571 (9th Cir. 2016). The fact that the District Court ruled on Appellants' NEPA claim does not foreclose this Court from finding that Appellants failed to exhaust administrative remedies. *See, e.g.*, *id.* at 574 (ruling that NEPA claims were not exhausted even though the district court ruled on them).

30

Crucial to this appeal, the Forest Service recognized that it had no formal easement across the Zimmermans' land in both the 2006 Travel Plan and the 2009 Road and Trails Decision, set a goal to obtain an easement to provide public access, and stated that a new trail would need "to correspond with final rights-of-way[.]" 3-ER-0413 *see also* 3-ER-0398–0599, 4-ER-0634–0678, SER-220, 2-ER-0250, SER-161–64, SER-179. If Appellants wanted to challenge the Forest Service's assertion that it had no property interests in the Zimmermans' land, they needed to do so in the 2006 Travel Plan and 2009 EA.

Appellants do not show that any such claim was made during comments on the 2006 Travel Plan or the 2009 Roads and Trails Decision or that the cited railroad deed was ever provided to the Service at those times. Indeed, comments regarding the railroad deed and questions regarding ownership interests were raised only in response to the Service's limited request for public comment on environmental impacts of trail construction that were not considered in 2006 and 2009. SER-207. Appellants' failure to raise the railroad deeds during those prior actions means that "the issue was not exhausted and is not now subject to review." *Oregon Natural Desert Ass'n*, 840 F.3d at 574.

31

## C. The Trail Donation Agreement Is Not Subject to NEPA Analysis

NEPA requires an analysis for "major Federal actions." 42 U.S.C. § 4332(C); 40 C.F.R. § 1500.1(a); *see also Sierra Club v. Penfold*, 857 F.2d 1307, 1313 (9th Cir. 1988) ("NEPA compliance is required only where there is 'major Federal action' which significantly affects the environment."). In general, major federal actions tend to involve the approval of a project or the use of federal funds. 40 C.F.R. § 1508.1(q)(3). In *Alaska v. Andrus*, 591 F.2d 537 (9th Cir. 1979), this Court noted that "[t]he Ninth Circuit, however, has not been receptive to arguments that impact statements must accompany inaction, or actions that are only marginally federal. Where federal funding is not present, this court has generally been unwilling to impose the NEPA requirement." *Id.* at 541. And the Council on Environmental Quality, the executive body responsible for overseeing the implementation of NEPA, has via regulation excluded certain activities or decisions from the definition of a major federal action and from NEPA analysis, including "[j]udicial or

administrative civil or criminal enforcement actions." 40 C.F.R. § 1508.1(q)(1)(iv).

Here, the Forest Service decided not to litigate a speculative civil claim and did not use federal resources. Those decisions are outside of the scope of NEPA. *Alaska v. Andrus* is instructive here. In that case, the Secretary of the Interior decided not to regulate wolves on federal land within the State of Alaska that were subject to the State of Alaska's wolf-kill program. *Andrus*, 591 F.2d at 538. There, the Court held that the Secretary's inaction did not trigger NEPA. *Id.* Likewise, here, the Forest Service decided not to act by refraining from bringing any action against the Zimmermans and did not use federal resources to litigate a potential civil claim. Moreover, as discussed above, any potential prescriptive rights likely lapsed, and the Forest Service considered such a prescriptive easement claim "non-viable." SER-019. Appellants point to no requirement compelling the Forest Service to allocate resources to litigate meritless claims, and if "judicial or administrative or civil enforcement actions" are outside the scope of NEPA, then certainly the decision not to pursue such actions are similarly outside NEPA's scope. *See* 40 C.F.R. § 1508.1(q)(1)(iv). Simply put, the Forest Service's decision

to negotiate rather than escalate a conflict with litigation was not required to be considered under NEPA.

Moreover, the Forest Service did not need to consider the acceptance of the easement donation under NEPA because donations of land are categorically excluded from NEPA analysis. *See* 36 C.F.R. § 220.6(d)(6)(i) (excluding the "[a]cquisition of land or interest in land," from NEPA analysis, including "[a]ccepting the donation of lands or interests in land to the NFS"); *See also* SER-198 (Jason Brey, Acting Deputy Forest Supervisor, stating that "[t]he acquisition of the easement for portions of the trail re-route that lie on private land follow the process outlined in 36 CFR [§] 220.6(d)(6). This process is categorically excluded from further environmental analysis."). In addition, the Forest Service was not even required to produce a supporting record or a decision memo for the Trail Donation Agreement. *See* 36 C.F.R. § 220.6(d)(6)(i).

### D. Previous NEPA Analyses Recognized That the Forest Service Needed to Obtain Access Across Private Property and Analyzed the Impacts of Obtaining Access

Appellants claim that the Porcupine Ibex Project was not included in the NEPA analyses for the 2006 Travel Plan and the 2009 Road and Trails Decision. Opening Br. at 25–33. With respect to the 2006 Travel

34

Plan, Appellants allege that the Travel Plan does not reflect the Porcupine Ibex Project in part because the 2006 Travel Plan did not address "exchanging easement interests with private landowners" and because the travel plan was "largely focused on protecting, securing, and perfecting its existing access rights on the existing trails across private land sections." *Id.* at 27–28. That is incorrect. First, the thrust of Appellants' argument rests on the incorrect belief that the Forest Service already had a property right in the Zimmermans' land prior to the Land Donation Agreement. But as already discussed, and as the District Court held, the Forest Service had no such interest prior to the easement donation. *See, infra*, Section I.

Second, the 2006 Travel Plan did discuss the need to acquire access. Indeed, one of the stated goals of the 2006 Travel Plan was to provide the public with "reasonable, legal access to Gallatin National Forest lands to provide for human use and enjoyment and to protect and manage Forest resources and values." 2-ER-0225. And with respect to the Porcupine Lowline Trail in particular, the Plan stated that the Forest Service "must first negotiate an easement for portions of this trail that pass through private land." 2-ER-0250. This is consistent with the findings of the

35

magistrate judge below, who found that the 2006 Travel Plan "recognized the need to secure easements in the area through private land on roads and trails designated for public use to provide access to National Forest lands." 1-ER-0037.

Appellants' attack on the 2009 EA suffers from the same infirmities. Appellants allege that the Ibex Project was not included in the 2009 EA in part because the 2009 EA did not include "all aspects of the Ibex project including the easement exchange and relinquishment of existing trails," and because it included only general information on where the trail would be located. Opening Br. at 30–31. First, Appellants' allegation that the 2009 EA did not address an easement exchange and relinquishment of easements is a red herring. As previously discussed, the Forest Service never had any interest to exchange or relinquish. *See* 1-ER-0014. And the 2009 EA informed the public that the trail reroute "may be shifted onto National Forest land to the east" and that any route across private land will "be relocated to correspond with final rights-of-way." 3-ER-0413; 3-ER-0398–0599. Second, the 2009 EA provided the public with information on the location of the reroute by identifying the narrow corridor where the reroute would occur and providing maps of the

location. 3-ER-0600–61, 3-ER-0372. The District Court correctly found that this "description of the Porcupine-Lowline trail reroute is sufficiently descriptive to inform the public." 1-ER-0016. The 2018 scoping process further confirmed that the proposed reroute did not include any issues not already addressed by the 2009 EA. *See* 1-ER-0040 ("After reviewing the comments received, the Forest Service determined the project would not pose any unforeseen risks to the environment, and thus, was consistent with the 2009 EA.").

Appellants' persistent mislabeling of the Ibex Project as involving the relinquishment of public easements also infects its reasonable alternatives argument. Opening Br. at 59–66. Appellants' claim that the Forest Service never considered reasonable alternatives for the Ibex project because "[n]one of the previous alternatives considered and evaluated included the Ibex project's easement exchange and related decision to release and obliterate and remove portions of the Porcupine Lowline and North Fork Elk Creek trails from all visitor use maps[.]" *Id.* at 61. But this argument suffers from the same problem as all the others: neither the Forest Service nor the public ever owned a property interest in the Zimmermans' land, so the Ibex Project cannot fairly be described

37

as "involve[ing] an easement exchange," or "giving up the existing

Porcupine Lowline and North Fork Elk Creek trails."

Ultimately, the District Court was correct when it recognized that:

> [t]he reasonableness of a given alternative is limited to what
> easements could be secured or negotiated; the decision as the
> USFS described it in the EA was to either build a new trail or
> not. The Court cannot say that this decision was unreasonably
> related to the purposes of the project.

1-ER-0019.

## CONCLUSION

This Court should affirm the judgment of the District Court.

DATED: June 5, 2023.

Respectfully submitted,

JEFFREY W. McCOY
PAIGE E. GILLIARD

s/ Paige E. Gilliard
PAIGE E. GILLIARD

*Attorneys for Landowner*
*Defendants – Appellees*

## STATEMENT OF RELATED CASES

There are no related cases currently pending in this Court.

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS
### 9th Cir. Case Number 22-35555

I am the attorney or self-represented party.

**This brief contains 7,380 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X]    complies with the word limit of Cir. R. 32-1.

[ ]    is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]    is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ]    complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ]    it is a joint brief submitted by separately represented parties;

    [ ]    a party or parties are filing a single brief in response to multiple briefs; or

    [ ]    a party or parties are filing a single brief in response to a longer joint brief.

[ ]    complies with the length limit designated by court order dated ____.

[ ]    is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Paige E. Gilliard        **Date** June 5, 2023
        PAIGE E. GILLIARD

40

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Paige E. Gilliard
PAIGE E. GILLIARD